UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CLIO PHILLIPS

                              Plaintiff,

        v.

UNITED FOOD AND COMMERCIAL
WORKERS UNION LOCAL 2013,
LEONARD RUSS, LINDA MYERS RUSS,
*and* BAYBERRY REHABILITATION AND
CARE CENTER.

                              Defendants.

No. 23-CV-8283 (KMK)

OPINION & ORDER

Appearances:

Clio Phillips
Bronx, NY
*Pro Se Plaintiff*

Kevin D. Jarvis, Esq.
O'Brien, Belland & Bushinsky, LLC
Moorestown, NJ
*Counsel for Defendant United Food
and Commercial Workers Union Local 2013*

Daniel David Schudroff, Esq.
Jackson Lewis P.C.
New York, NY
*Counsel for Defendants Leonard Russ, Linda Myers Russ,
and Bayberry Rehabilitation and Care Center*

Nicholas A. Scotto, Esq.
Jackson Lewis P.C.
Melville, NY
*Counsel for Defendant Bayberry Rehabilitation and Care Center*

KENNETH M. KARAS, United States District Judge:

Plaintiff Clio Phillips ("Plaintiff"), proceeding pro se, brings this Action against United Food and Commercial Workers Union Local 2013 (the "Union"), Leonard Russ and Linda Myers Russ (the "Russ Defendants"), Bayberry Rehabilitation and Care Center ("Bayberry", and together with the Union and the Russ Defendants, "Defendants"), alleging that Defendants discriminated and retaliated against her on the basis of her race, color, and nationality in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., Section 1981 of the 1866 Civil Rights Act ("Section 1981"), and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 et seq. (*See generally* Amended Complaint ("AC") (Dkt. No. 12).)  Plaintiff also asserts claims against Bayberry and Union under the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 160 et seq. (*Id.*)  Before the Court are multiple Motions to Dismiss Plaintiff's Amended Complaint, (collectively, the "Motions").  (*See* Not. of Bayberry Mot. (Dkt. No. 29)); Not. of United Food Mot. ("Union Mem.") (Dkt. No. 38)); Not. of Russ Mot. (Dkt. No. 43).)

For the reasons that follow, the Court grants Defendants' Motions in part and denies them in part.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiff's Amended Complaint, Plaintiff's opposition papers, and various exhibits submitted by Defendants in connection with their Motions.[1]  The facts alleged in the Amended Complaint are assumed true

---

[1] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56."

for the purpose of resolving the instant Motion. *See CompassCare v. Hochul*, 125 F. 4th 49, 56–57 (2d Cir. 2025).[2]

Plaintiff was employed by Bayberry, a nursing home located in New Rochelle, NY owned and operated by the Russ Defendants. (*See* AC at 1, 3; Decl. of D. Schudroff, Esq. in

---

*Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *accord Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Thomas*, 232 F. Supp. 2d at 275; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (same). Moreover, the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum." *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 (S.D.N.Y. Mar. 28, 2022) (quotation marks and citation omitted); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).

Bayberry urges the Court to disregard the allegations in Plaintiff's January 17 and January 21, 2025, opposition letters, (Dkt. Nos. 33, 35), as they "contain[] factual assertions absent from [the Amended Complaint,]" (*see* Bayberry Reply in Supp. of Mot. 4 ("Bayberry Reply") (Dkt. No. 36)). However, the Court may consider factual allegations raised in a pro se plaintiff's opposition "to the extent that those allegations are consistent with the Amended Complaint," and will do so here. *Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020); *see Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (same). Bayberry also asks the Court to disregard Plaintiff's January 21, 2025, letter, as it was filed three days after the deadline to respond to Bayberry's Motion. (Bayberry Reply 3.) Out of solicitude for Plaintiff's pro se status, however, the Court will consider her January 21, 2025, letter. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (noting that "pro se litigants must be accorded 'special solicitude'" (citing *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994))). The Court notes that Bayberry was already on notice of the majority of the content therein—indeed, Bayberry describes Plaintiff's letter as "recount[ing] many of the same baseless averments from [the Amended Complaint]," (Bayberry Reply 3)—and had an opportunity to address those contents in its Reply.

[2] Although the Court has carefully scrutinized Plaintiff's papers in an attempt to try to understand the facts alleged and the nature of the claims asserted, the Court notes that the Amended Complaint and Plaintiff's opposition papers are handwritten, largely illegible, and frequently difficult to decipher.

Supp. of Bayberry Mot. ("Bayberry Decl.") Exs. 2–3 (Dkt. Nos. 30-2, 30-3).)[3]  Plaintiff worked

at Bayberry from 2019 to 2021 as a Certified Nursing Assistant ("CNA") and, like the other

CNAs, was a member of the Union.  (*See* AC 1, 3; Pl's Jan. 17, 2025 Ltr. at 2.)

On or about July 15, 2021, the Bayberry employees were informed that their Union

contact would be expiring at the end of the month and that negotiations on a new contract would

begin shortly.  (AC 13.)  Plaintiff opposed the terms of the proposed wage increase in the new

contract, which was ultimately voted down by the workers.  (*Id.* at 3–4.)  On September 15,

2021, Plaintiff's supervisor, Marc Lamothe ("Lamothe") informed her that he "hear[d] that

[Plaintiff] told the workers not to vote for the Union Contract, and they listened to you and

---

[3] In connection with their Motions, Bayberry and the Russ Defendants submit: (1) Plaintiff's January 25, 2022, Unfair Labor Practice Charge and February 11, 2022 First Amended Charge filed with the National Labor Relations Board ("NLRB"); (2) an October 12, 2022 letter from the NLRB Region 2 Regional Director to Plaintiff; and (3) April 4, 2023 letters from the NLRB Office of Appeals to Plaintiff.  (*See* Bayberry Decl. Exs. 2–4 (Dkt. Nos. 30-2 through 30-4)); Decl. of D. Schudroff, Esq. in Supp. of Russ Mot. ("Russ Decl.") Exs. 2–4 (Dkt. Nos. 45-2 through 45-4).)  The Union submits (1) Plaintiff's March 2, 2022 Unfair Labor Practice Charge filed with the NLRB and (2) an October 11, 2022 letter from the NLRB Region 2 Regional Director to Plaintiff.  (*See* Decl. of K. Jarvis, Esq. in Supp. of Union Mot. ("Union Decl.") Exs. 2–3 (Dkt. Nos. 38-3 through 38-4).)  Defendants cite no authority why the Court should consider these materials.  (*See* Bayberry Mem. 12 n.8 (stating only that the attached documents "comport with th[e judicial notice] requirement," without providing citation).) However, "it is well-settled that courts may take judicial notice of NLRB charges at the motion to dismiss stage."  *Diaz v. Loc. No. 241, Transp. Workers Union of Am., Univ. Div.*, No. 17-CV-8898, 2019 WL 3765924, at *4 (S.D.N.Y. Aug. 9, 2019); *see also Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (holding that the district court properly took judicial notice of NLRB charge in connection with a motion to dismiss); *Howell v. 1199 Union*, No. 14-CV-174, 2015 WL 273655, at *3 (S.D.N.Y. Jan. 16, 2015) (taking judicial notice of "relevant NLRB and . . . Union decisions").  Accordingly, "the Court will consider the documents only for the fact that they exist, not the truth of the matters asserted therein."  *Doe 1 v. County of Rockland*, No. 21-CV-6751, 2025 WL 945873, at *3 (S.D.N.Y. Mar. 28, 2025) (citing *Ferranti v. Arshack, Hajek & Lehrman PLLC,* No. 20-CV-2476, 2021 WL 1143290, at *3 (S.D.N.Y. Mar. 24, 2021)); *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *7 (S.D.N.Y. Sept. 29, 2018) (taking judicial notice of filings in a court case submitted by a party "only to establish the fact of such filings and what they contained, not for the truth of the matter asserted therein" (citation omitted)).

vote[d] against it." (*Id.* at 14.)  Lamothe then told her that she was "nothing but a traitor" and that he was "going to punish" her by increas[ing] the number of residents in her care and preventing her from taking a lunch break.  (*Id.*)  When Plaintiff reported to the nurses' station the following day, Lamothe informed her that he "did not want to see [her] at the nurses station" and that "when it comes to black niggers like [Plaintiff]," he had "punishment[] that is harsh," and had "no tolerant [sic] for all this."  (*Id.*)

On or around October 5, 2021, Plaintiff filed a petition with the NLRB to decertify the Union as the collective bargaining representative for the Bayberry employees.  (*See id.* at 2, 11.) The following day, the nursing director, Judith Pulicicchio, told Plaintiff she was "very angry" with her and asked Plaintiff if she would withdraw the decertification petition.  (*Id.* at 15.) Pulicicchio told Plaintiff to "take [her] black ass and go back where [she] came from nigger." (*Id.*)  On October 26, 2021, Pulicicchio informed Plaintiff she was "not going to stop hassl[ing]" her, because Plaintiff's filing of the NLRB complaint had damaged Bayberry's reputation, and told Plaintiff to go "back to Jamaica where you came from, because you[] are an illegal immigrant."  (*Id.*)

Two days later, Pulicicchio asked Plaintiff again if she had decided to withdraw her petition from the NLRB.  (*Id.* at 15–16.)  When Plaintiff informed her she would not, Pulicicchio told Plaintiff "you fat bitch [who] came on the Banana boat from Jamaica to the United State[s] to make trouble[,] we will kick your black ass out of our nursing home, because you are one of the most despicable black nigger [sic] I ever comes across, go back to Jamaica where you came from."  (*Id.* at 16.)

On November 2, 2021, Pulicicchio again told Plaintiff to withdraw her petition, telling her that she would fire her otherwise and that "nothing will come out of it because [Pulicicchio

was] a white woman and [Plaintiff was] a black nigger from Jamaica." (*Id.*) Pulicicchio then told Plaintiff she had "no rights here because this is our country only for whites alone." (*Id.*) A week later, Pulicicchio gave Plaintiff a "last chance" to withdraw her petition, calling her a "traitor" to her employer. (*Id.* at 16–17.) Plaintiff was also assigned to take care of additional residents "as punishment." (*Id.* at 18.)

On the morning of November 11, 2021, Pulicicchio summoned Plaintiff to her office and informed her that, because Plaintiff had not properly cleaned or dressed a resident on the prior day, Pulicicchio had recommended that Plaintiff be fired. (*Id.* at 17.) A few hours later, Pulicicchio told Plaintiff she was giving her "one more chance to change [her] mind and withdraw the paper from the [NLRB]." (*Id.* at 17–18.) When Plaintiff again refused, Pulicicchio told her she was "nothing but a damn traitor" who "should go back to Jamaica where [she] belongs." (*Id.* at 18.) Later that afternoon, Pulicicchio informed Plaintiff she was being fired for allegedly neglecting a resident. (*Id.*; *see also* Pl's Jan. 17, 2025 Ltr. 30 (Nov. 11, 2021 Employee Warning Record).) While firing her, Pulicicchio called Plaintiff a "black dirty bitch" and told her she would "report [her] black ass." (AC 18.)

Starting the next day, Katie Coombs, a Union representative, was in frequent contact with Plaintiff to discuss challenging Plaintiff's termination. (*Id.* at 5–9; *see* Pl's Jan. 17, 2025 Ltr. 6–17.) Although Coombs cautioned Plaintiff there was "no guarantee" that the Union would be successful, Coombs attempted to arrange a meeting between Plaintiff and Bayberry representatives. (AC 7–8.) Coombs also repeatedly encouraged Plaintiff to withdraw her petition from the NLRB, (*id.* at 8–9), and warned her that she "should not even think of applying for unemployment [benefits]," as she was terminated for cause and thus, her application might be denied, (*id.* at 7; *see* Pl's Jan. 17, 2025 Ltr. 16.) No meeting between Plaintiff and Bayberry ever

occurred and the Union ultimately declined to file a grievance on Plaintiff's behalf.  (*See* AC 9; Union Decl. Ex. 2.)

On January 25, 2022, Plaintiff filed an unfair labor practice charge with the NLRB, alleging that Leonard Russ and Linda Meyer Russ, doing business as Bayberry Care Center, "discriminated against [Plaintiff] by terminating her in retaliation for engaging in protected concerted activities and or union activities and in order to discourage protected, concerted activities or membership . . . ."  (*See* Bayberry Decl. Ex. 2 at 6; Russ Decl. Ex. 2 at 6.)  On October 12, 2022, the NLRB Regional Director for Region 2 dismissed Plaintiff's charge.  (*See* Bayberry Decl. Ex. 3; Russ Decl. Ex. 3.)  On April 4, 2023, the NLRB's Office of Appeals rejected Plaintiff's appeal of that dismissal.  (*See* Bayberry Decl. Ex. 4; Russ Decl. Ex. 4.)

On March 2, 2022, Plaintiff filed another labor practice charge with the NLRB, this time against the Union, asserting that the Union "restrained and coerced employees in the exercise of rights protected by Section 7 of the [NLRA] by refusing to process the grievance of [Plaintiff] regarding her discharge for arbitrary or discriminatory reasons or in bad faith."  (*See* Union Decl. Ex. 2.)  On October 11, 2022, the NLRB Regional Director dismissed Plaintiff's charge against the Union.  (*See* Union Decl. Ex. 3.)

B. Procedural History

Plaintiff, proceeding pro se, filed her Complaint on September 19, 2023.  (*See* Dkt. No. 1.)  On September 22, 2023, Chief Judge Swain granted Plaintiff's request to proceed in forma pauperis and, on December 5, 2023, granted Plaintiff leave to file an Amended Complaint.  (*See* Dkt. Nos. 3–4.)  Plaintiff failed to file an Amended Complaint within the original or extended deadlines and the Action was dismissed.  (*See* Dkt. Nos. 5–9.)  However, after seeking and obtaining leave to refile, Plaintiff filed an Amended Complaint on June 25, 2024.  (*See* Dkt. Nos. 10–12, 15.)

On October 25, 2024, Bayberry filed a pre-motion letter requesting leave to file its instant Motion. (*See* Dkt. No. 20.) In response, the Court adopted a briefing schedule, pursuant to which Bayberry filed its Motion on December 18, 2024. (*See* Bayberry Not. of Mot; Bayberry's Mem. in Supp. of Mot. ("Bayberry Mem.") (Dkt. No. 29); Bayberry Decl.) Plaintiff responded via letter on January 17 and 21, 2025. (*See* Jan. 17, 2025 Ltr. from Pl.; Jan. 21, 2025 Ltr. from Pl.) Bayberry filed its Reply on January 31, 2025. (*See* Bayberry Reply; Decl. of D. Schudroff in Supp. of Mot. ("Reply Decl.") (Dkt. No. 37).)

Separately, the Union and the Russ Defendants sought and received leave to file their respective Motions. (*See* Dkt. Nos. 31–32, 39–40.) Pursuant to the Court-ordered briefing schedules, the Union filed its Motion on January 31, 2025, (*see* Dkt. No. 32; Union Mem.; Union Decl.), and the Russ Defendants filed their Motion on March 4, 2025, (*see* Dkt. No. 40; Russ Not. of Mot.; Russ Mem. in Supp. of Mot. ("Russ Mem."); Russ Decl.). Plaintiff did not respond to either Motion. (*See generally* Dkt.)

## II. Discussion

### A. Standard of Review

#### 1. 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and

quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any

set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must

allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a

plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[]

complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation

omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe her submissions "liberally and interpret [them] to raise the strongest arguments that [they] suggest[]." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman*, 470 F.3d at 474 (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

### 2. 12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2008); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

      B. <u>Analysis</u>

While Plaintiff does not precisely delineate her specific claims, the Court interprets her pleadings liberally and construes them as raising claims for discrimination and retaliation under Title VII, § 1981, and the NYSHRL, as well as claims arising under the NLRA—specifically, breach of the duty of fair representation and claims under §§ 7 & 8 of the NLRA. (*See generally* AC.) The Court addresses each claim in turn.

      1. <u>Title VII Claims</u>

As a threshold issue, the Court notes that there is no individual liability under Title VII. *Gill-Dratyon v. N.Y. State Educ. Dep't*, No. 23-CV-10259, 2025 WL 872997, at *8 (S.D.N.Y. Mar. 20, 2025); *see also Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII." (citation omitted)); *Vora v. N.Y.C. Dep't of Educ.*, No. 22-CV-10891, 2024 WL 1116312, at *3 (S.D.N.Y. Mar. 14, 2024) ("Title VII . . . do[es] not impose liability on individuals."). Accordingly, to the extent that Plaintiff asserts Title VII claims against the individual Russ Defendants, these claims are dismissed with prejudice. *See Tenemille v. Town of Ramapo*, No. 18-CV-724, 2020 WL 5731964, at *10 (S.D.N.Y. Sept. 24, 2020) (dismissing Title VII claims against individual defendants with prejudice).

As for the remaining Defendants, they argue that Plaintiff's Title VII claims must be dismissed for failure to exhaust her administrative remedies. (Bayberry Mem. 13, 16; United Food Mem. 11–12.) The Court agrees.

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII statutory scheme and, as such, a precondition to bringing such claims in federal court." *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 437 (S.D.N.Y. 2023) (alterations adopted) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001)).  Administrative exhaustion serves "to avoid unnecessary judicial action by the federal courts by '[giving] the administrative agency the opportunity to investigate, mediate, and take remedial action.'"  *Sackett v. Dirlam*, No. 22-CV-6245, 2023 WL 4206520, at *4 (W.D.N.Y. June 26, 2023) (alteration in original) (quoting *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198 (2d Cir. 1985)).  "Thus, before filing a complaint in federal court, plaintiffs asserting Title VII . . . claims must first exhaust their administrative remedies by filing a complaint with the EEOC or the equivalent state agency."  *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, No. 23-CV-7408, 2025 WL 863572, at *4 (S.D.N.Y. Mar. 18, 2025) (quoting *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *10 (S.D.N.Y. Sept. 23, 2024)).  "The exhaustion requirement applies not only to causes of action but also to underlying factual allegations."  *Kirkland-Hudson*, 665 F. Supp. 3d at 439 (quoting *Fanelli v. New York*, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014)).  Included in the exhaustion process is a 300-day requirement that "is analogous to a statute of limitations."  *Eliav v. Roosevelt Island Operating Corp.*, No. 22-CV-9978, 2024 WL 196477, at *3 (S.D.N.Y. Jan. 18, 2024) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996)).  Failure-to-exhaust arguments "are affirmative defenses, where defendants have the burden of proof to establish that plaintiffs failed to exhaust their required administrative remedies."  *Oparaji v. Tchrs.' Ret. Sys. of City of N.Y.*, No. 23-CV-5212, 2024 WL 3046120, at *5 (S.D.N.Y. June 18, 2024) (citing, inter alia, *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018)).  "[A] court should .

. . grant a motion to dismiss pursuant to [Rule] 12(b)(6) for failure to exhaust [only] if it is clear from the face of the complaint that a plaintiff has not exhausted their remedies." *Ashmeade*, 2024 WL 4266391, at *11 (quotation marks omitted); *see also Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016) (collecting cases).

However, "[t]he failure to file a timely complaint with the EEOC is not necessarily fatal," as "[a] plaintiff may overcome this deficiency by showing that [s]he is entitled to equitable tolling." *Bowens v. Corr. Ass'n of New York*, No. 19-CV-1523, 2019 WL 1586857, at *6 (E.D.N.Y. Apr. 12, 2019) (citing *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 385–86 (2d Cir. 2015)); *see also Oparaji*, 2024 WL 3046120, at *5 ("The Second Circuit has repeatedly held that 'the failure to exhaust administrative remedies is [only] a precondition to bringing a Title VII . . . claim in federal court, rather than a jurisdictional requirement' that, 'like a statute of limitations, is subject to [equitable defenses.]'" (quoting *Hardaway*, 879 F.3d at 489, 491)).  To warrant equitable tolling, a plaintiff must show she has pursued her claims with "reasonable diligence" and that "extraordinary" circumstances beyond her control prevented her from filing her administrative claims. *Bowens*, 2019 WL 1586857, at *6 (citing *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).

It is apparent from the face of the Amended Complaint that Plaintiff has not exhausted her administrative remedies with respect to her Title VII claims.  Indeed, Plaintiff directly acknowledges that she "did not get a chance to" file a charge with the EEOC.  (AC at 2, 11–12; *see id.* at 12 (noting, in response to a form question as to when she received an EEOC Notice of Right to Sue letter, that she "never got there").)  The only explanation Plaintiff offers for this failure is that her "case took so long to be decided [that time had] pass[ed]."  (AC at 2, 11.)  This cursory allegation is insufficient to demonstrate that Plaintiff pursued her claims with reasonable

diligence or that extraordinary circumstances prevented her from filing with the EEOC. *See Shin v. NBC Universal Media, LLC*, No. 23-CV-10996, 2025 WL 438297, at \*9 (S.D.N.Y. Feb. 7, 2025) (declining to apply equitable tolling where pro se plaintiff "fail[ed] to identify any extraordinary circumstances that frustrated her ability to file a timely EEOC charge"); *Bowens*, 2019 WL 1586857, at \*6 (declining to apply equitable tolling where plaintiff failed to allege "extraordinary circumstances beyond his control"). As such, the Court finds that Plaintiff has not alleged any circumstances to justify the application of equitable tolling and thus, Plaintiff's Title VII claims must be dismissed for failure to exhaust her administrative remedies. *See Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 300 (S.D.N.Y. 2016) (granting a motion to dismiss where the "[p]laintiff's failure to exhaust her Title VII claims [wa]s clear from the face of the complaint" (internal quotation marks omitted)); *cf. Mulkern v. Lowe's Home Centers, LLC*, No. 23-CV-3689, 2025 WL 674325, at \*4–6 (S.D.N.Y. Mar. 3, 2025) (granting a motion to dismiss ADA claims where "it [wa]s clear from the face of the [c]omplaints that [p]laintiff has failed to exhaust, as he admit[ted] that he has not filed an EEOC charge," and where plaintiff did not demonstrate he was entitled to equitable tolling).

## 2. Section 1981 Claims

Contrary to Title VII, no exhaustion requirement applies to Plaintiff's § 1981 claims. *See Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2025 WL 903757, at \*12 (S.D.N.Y. Mar. 25, 2025) ("Section 1981 does not have an exhaustion requirement, instead, all that is required for a timely claim under Section 1981 is that it fall within the four-year statute of limitations." (citing *Mitchell v. Planned Parenthood of Greater New York, Inc.*, 745 F. Supp. 3d

68, 102 (S.D.N.Y. 2024))). Instead, Defendants argue that Plaintiff has failed to state viable

discrimination and retaliation claims.[4] The Court addresses each claim in turn.

        a)   <u>Discrimination Claim</u>

            i.   <u>Applicable Law</u>

Section 1981 requires that "[a]ll persons within the jurisdiction of the United States shall

have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42

U.S.C. § 1981(a). Section 1981 thus prohibits racial discrimination "with respect to the

enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as

employment[.]" *Calvelos v. City of New York*, No. 19-CV-6629, 2020 WL 3414886, at *9

(S.D.N.Y. June 22, 2020) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 224–25 (2d Cir.

2004)). Further, a "plaintiff may allege that discrimination occurred in the form of discrete

adverse employment actions." *Williams*, 2022 WL 4485298, at *5 (quoting *Rubert v. King*, No.

19-CV-2781, 2020 WL 5751513, at *6 (S.D.N.Y. Sept. 25, 2020)). Although § 1981 does not

itself "specifically authorize[] private lawsuits to enforce" its prohibitions, the Supreme Court

has "created a judicially implied private right of action." *Comcast Corp. v. Nat'l Ass'n of

African Am.-Owned Media*, 589 U.S. 327, 333–34 (2020).

Claims of discrimination under § 1981 are "analyzed pursuant to the familiar three-part

framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Royall v. City*

---

[4] Defendants' arguments focus almost solely on Plaintiff's Title VII claims, noting only in passing that discrimination claims under § 1981 are subject to the same analysis and asserting that the Amended Complaint "does not plausibly allege that Plaintiff's termination was the product of discrimination based on a protecting characteristic." (*See* Bayberry Mem. 13, 16 n.8; Russ Mem. 13, 15 n.8; Union Mem. 13.) Because "race . . . discrimination claims brought under § 1981, Title VII, and the NYSHRL are all evaluated under the same framework," *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2022 WL 4485298, at *5 (S.D.N.Y. Sept. 27, 2022), the Court extrapolates Defendants' relevant Title VII arguments and applies them to Plaintiff's § 1981 claims.

*of Beacon*, No. 24-CV-3, 2024 WL 4266546, at *11 (S.D.N.Y. Sept. 23, 2024); *see also Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) ("[The plaintiff's] disparate treatment claim under . . . § 1981 is subject to the burden-shifting evidentiary framework set forth in *McDonnell Douglas*." (citing *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010))); *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, No. 20-CV-10923, 2022 WL 845770, at *5 (S.D.N.Y. Mar. 22, 2022) (same).  Thus, a plaintiff bringing a discrimination claim must plausibly allege that (1) "[s]he belonged to a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).[5]

---

[5] If a plaintiff makes such a showing, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802.  Finally, if the employer satisfies this requirement, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the non-discriminatory reason was merely a pretext for discrimination.  *See id.* at 804–05; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (articulating the three-step *McDonnell Douglas* framework).

Because "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (italics omitted), the Court need only address the first stage of the *McDonnell Douglas* framework, *see Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013) ("[A] [p]laintiff need not make out a prima facie case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that she is entitled to relief that gives [the defendant] fair notice of the . . . discrimination claim and the grounds upon which it rests." (italics and citation omitted)).  And "[a]lthough [the] [p]laintiff need not allege facts sufficient to make out a prima facie case for any of her discrimination claims in her [c]omplaint, the elements thereof provide an outline of what is necessary to render her claims for relief plausible."  *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) (italics omitted); *see also Littlejohn*, 795 F.3d at 311 & n.9 (noting that while a plaintiff need not plead a prima facie case of discrimination, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim" (quotation marks omitted)); *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 312 (S.D.N.Y. 2015) (collecting cases); *Barker v. UBS AG*, No. 09-CV-2084, 2011 WL

Moreover, a plaintiff pursuing a § 1981 claim "must show that the discrimination was intentional." *Patterson*, 375 F.3d at 226; *see also Alameda v. Ass'n of Soc. Work Boards*, No. 23-CV-6156, 2024 WL 4302389, at *5 (S.D.N.Y. Sept. 25, 2024) (noting that § 1981 "can be violated only by purposeful discrimination" (quoting *Gen. Bldg. Contractors Ass'n v. Pennyslvania*, 458 U.S. 375, 391 (1982))). Further, to prevail on a § 1981 claim, a plaintiff "must initially plead and ultimately prove that, but for race, [she] would not have suffered loss of h[er] legally protected rights." *Comcast Corp.*, 589 U.S. at 341. In other words, a § 1981 plaintiff must plausibly allege that the defendant's discriminatory intent was a "but-for" cause of the actionable adverse employment action or hostile environment. *Id.*

ii.    Application

As an initial matter, the Court finds that Plaintiff has not plausibly alleged a § 1981 discrimination claim against the Russ Defendants or the Union. It is well-established that "[p]ersonal liability under [§] 1981 must be predicated on the actor's personal involvement." *Patterson*, 375 F. 3d at 229. Because Plaintiff has alleged no facts demonstrating that either of the Russ Defendants was personally involved in any discriminatory treatment of Plaintiff, (*see generally* AC), Plaintiff's claim fails as to those Defendants, *see Lee v. Riverbay Corp.*, 751 F. Supp. 3d 259, 288 (S.D.N.Y. 2024) (dismissing a discrimination claim where plaintiff did not allege personal involvement by the individual defendants); *Rubert*, 2020 WL 5751513, at *6, 10 (same). Similarly, Plaintiff does not allege any facts suggesting that the Union or anyone affiliated with the Union discriminated against her. (*See generally* AC.) Thus, any

---

283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven though establishing a prima facie case of . . . discrimination is not necessary to survive a motion to dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil Procedure.").

discrimination claim asserted against the Union must also fail.[6] *See Butts v. N.Y.C. Dep't of*

*Educ.*, No. 22-CV-4418, 2024 WL 4350430, at *15 (E.D.N.Y. Sept. 30, 2024) ("Plaintiff's claim

for racial discrimination against Union Defendants under § 1981 similarly fails because she has

not pleaded facts sufficient to support a claim."), *reconsideration denied sub nom. Butts v. Kelch*,

2025 WL 388856 (E.D.N.Y. Feb. 4, 2025); *Moleon v. Alston*, No. 21-CV-1398, 2021 WL

5772439, at *9 (S.D.N.Y. Dec. 3, 2021) (dismissing § 1981 claim against union defendants

where "[t]he [complaint] does not allege any facts that support the specific allegation of racially

discriminatory animus by the Union, or that such was the but-for cause of any Union actions

relating to [plaintiff]").

However, with regard to Bayberry, the Court finds that Plaintiff has stated a viable cause

of action based on race-based employment discrimination.

There is no question that Plaintiff has plausibly alleged that she is a member of a

protected class with respect to her race, *see Johnson v. Rockland Cnty. BOCES*, No. 21-CV-

3375, 2022 WL 4538452, at *10 (S.D.N.Y. Sept. 28, 2022) ("[T]here is no doubt that [the

plaintiff], who is black, is a member of a protected class." (quoting *Thomas v. Roach*, 165 F.3d

137, 147 (2d Cir. 1999))), and that she experienced an adverse employment action—i.e., her

termination, *see Karupaiyan v. CVS Health Corp.*, No. 19-CV-8814, 2021 WL 4341132, at *12

(S.D.N.Y. Sept. 23, 2021) ("[M]aterially adverse changes include *termination of employment*, a

_____

[6] Plaintiff's NYSHRL discrimination claim against the Russ Defendants and the Union
fails for substantially the same reason. *See Williams*, 2022 WL 4485298, at *5 ("Race . . .
discrimination claims brought under § 1981 . . . and the NYSHRL are . . . evaluated under the
same framework."); *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366
(S.D.N.Y. 2012) ("[I]ndividual liability under [the NYSHRL] is limited to cases where an
individual defendant actually participates in the conduct giving rise to the plaintiff's
discrimination or retaliation claim." (alterations adopted) (internal quotation marks omitted)).

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of

benefits, significantly diminished material responsibilities, or other indices unique to a particular

situation." (emphasis added) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)));

*Opoku v. Brega*, No. 15-CV-2213, 2016 WL 5720807, at *7 (S.D.N.Y. Sept. 30, 2016) (referring

to termination as a "quintessential materially adverse employment action" (citation omitted)).[7]

Moreover, Plaintiff has proffered allegations that plausibly suggest that her race was a

"but-for" cause of her termination.  Plaintiff alleges that she was subject to a barrage of racially

discriminatory statements and conduct from two supervisors, Lamothe and Pulicicchio, who

berated Plaintiff with racial slurs and expressed open hostility to Plaintiff on account of her race.

(*See* supra Section I.A.)  Such allegations are plainly sufficient to establish a prima facie case of

discrimination.  *See Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 252 (E.D.N.Y.

2016) (finding plaintiffs plausibly alleged a § 1981 discrimination claim where they were

"subjected to various racially-tinged remarks by their direct supervisor and others in managerial

positions," as well as racial slurs); *Goode v. Donohue*, No. 12-CV-3982, 2015 WL 6680227, at

*5 (E.D.N.Y. Nov. 2, 2015) (finding a prima facie case of discrimination based on comments

including "lazy black bitch" and "her black ass was lazy" (alterations adopted)); *see also Rivera

v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014) ("Perhaps no single act

can more quickly alter the conditions of employment and create an abusive working environment

than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence

---

[7] Plaintiff also alleges that she was given an increased workload.  (AC 14, 18.)  Although "the assignment of a disproportionately heavy workload can constitute an adverse employment action," *Vega*, 801 F.3d at 85 (quotation marks omitted), Plaintiff does not allege sufficient facts here for the Court to infer that the assignment of additional residents was "more disruptive than a mere inconvenience or an alteration of job responsibilities," *Terry*, 336 F.3d at 138. Accordingly, the Court only considers Plaintiff's termination, not her increased workload, to be an adverse employment action sufficient to state a discrimination claim.

of his subordinates."); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 66, 70–71 (2d

Cir. 2000) (reversing the district court's grant of summary judgment and finding that "a stream

of racially offensive comments" like "Blacks . . . are lazy and don't want to work" and calling

plaintiff a "lazy black boy" sufficed to carry a prima facie burden of discrimination).

      Defendants—who characterize this alleged stream of racial opprobrium as mere "stray

remarks"—argue that Plaintiff cannot demonstrate that such remarks were related to her

termination, which was, by Plaintiff's own allegations, "the consequence of her NLRA-protected

activity." (*See* Bayberry Mem. 14–15.)  However, this argument is belied by the Amended

Complaint, which contains allegations directly linking the supervisors' discriminatory treatment

of Plaintiff to her race. (*See, e.g.*, AC 14 (Lamothe stating that "when it comes to black niggers

like [Plaintiff]," he had "punishment[] that is harsh"); *id.* at 15 (Pulicicchio telling Plaintiff to

"take [her] black ass and go back where [she] came from nigger").)  Moreover, Plaintiff alleges

that Pulicicchio—the primary perpetrator of the discriminatory conduct—was directly

responsible for the decision to terminate her and had previously threatened to fire her *because* of

her race. (*See id.* at 16 (Pulicicchio telling Plaintiff "we will kick your black ass out of our

nursing home, because you are one of the most despicable black nigger I ever comes across, go

back to Jamaica where you came from"); *id.* (Pulicicchio telling Plaintiff that she could not

complain about being fired because [Plaintiff was] "a black nigger from Jamaica" who had "no

rights here because this is our country only for whites alone").)  Thus, the fact that Plaintiff

asserts an additional, non-racially motivated reason for her termination does not, by itself,

undercut the plausible inference that she was terminated because of her race. *Cf. Herrera v.

N.Y.C. Dep't of Educ.*, No. 21-CV-7555, 2024 WL 245960, at *9 (S.D.N.Y. Jan. 23, 2024)

(noting, in the context of a § 1983 discrimination claim, that "the 'but for' standard does not

require [plaintiff] to show that discrimination was the sole and exclusive reason for the adverse

decision" (citing *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020)); *see Zann Kwan v.*

*Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013) ("'[B]ut-for' causation does not require

proof that [discrimination] was the only cause of the employer's action, but only that the adverse

action would not have occurred in the absence of the [discriminatory] motive.").[8]

     Accordingly, Bayberry's Motion is denied with respect to Plaintiff's § 1981

discrimination claim.[9]

---

[8] Bayberry argues that Plaintiff's "conclusory allegations of discrimination" are insufficient to survive a motion to dismiss. (Bayberry Mem. 14.) The cases Bayberry cites, however, involve allegations far sparser than the specific ones alleged here, which are more than sufficient to make out a prima facie case of discrimination. (*See id.* (citing *Durand v. Excelsior Care Grp. LLC*, No. 19-CV-2810, 2020 WL 7246437, at *6 (E.D.N.Y. Dec. 9, 2020) (dismissing a race discrimination claim where plaintiff alleged only that "[d]efendants' failure to pay [p]laintiffs and all similarly situated employees, equally with their Caucasian coworkers was based on the [d]efendants disdain for [p]laintiffs' skin color"), *Sutter v. Dibello*, No. 18-CV-817, 2019 WL 4195303, at *13 (E.D.N.Y. Aug. 12, 2019) (dismissing a race discrimination claim where plaintiff made "inherently conclusory" allegations such as "[a]lthough Sutter is White, [d]efendants treated her different because she is also a disabled and White female employee"), *report and recommendation adopted*, 2019 WL 4193431 (E.D.N.Y. Sept. 4, 2019), and *Trujillo v. City of New York*, No. 14-CV-8501, 2016 WL 10703308, at *15 (S.D.N.Y. Mar. 29, 2016) (dismissing a race discrimination claim where plaintiff alleged only "non-specific and boilerplate assertions of discriminatory animus," such as that defendants "discriminated in the workplace against [him] because of his race, color and/or national origin"), *aff'd*, 696 F. App'x 560 (2d Cir. 2017)).)

[9] Plaintiff's NYSHRL discrimination claim against Bayberry survives for substantially the same reasons discussed above. *See Williams*, 2022 WL 4485298, at *5 ("Race . . . discrimination claims brought under § 1981 . . . and the NYSHRL are . . . evaluated under the same framework."); *see Mitchell v. N.Y.C. Dep't of Educ.*, No. 20-CV-1555, 2022 WL 621956, at *5 (S.D.N.Y. March 3, 2022) (same). Indeed, the NYSHRL has a more "lenient standard" than § 1981, requiring a plaintiff to "allege only that the plaintiff was treated 'less well' . . . because of a discriminatory intent, i.e., that the unequal treatment was based, at least in part, on a protected characteristic." *Lee*, 751 F. Supp. 3d at 275 (internal quotation marks omitted) (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

b) Retaliation Claim

To the extent the Amended Complaint asserts a retaliation claim under § 1981, however, that claim fails.  As with discrimination claims, § 1981 retaliation claims are analyzed under the *McDonnell Douglas* framework.  *Moore v. Hadestown Broadway LLC*, 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024) (citing *Littlejohn*, 795 F.3d at 315).  Under this standard, a plaintiff must plausibly allege that "(1) [she] participated in a protected activity; (2) the defendant knew of the protected activity; (3) the plaintiff suffered an adverse employment action; and (4) there is a causal connection between the plaintiff's protected activity and the adverse employment action she suffered."  *Id.*; *see also Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (same).

Here, Plaintiff's claim falters on the first element.  Nowhere in the Amended Complaint does Plaintiff allege that she engaged in protected activity under § 1981.  Instead, she alleges that Defendants retaliated against her for filing a decertification petition with the NLRB—*not* because she made any sort of complaint about the racially discriminatory treatment she endured. (*See generally* AC.)  Accordingly, Plaintiff's § 1981 retaliation claim must be dismissed.  *See Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *33 (S.D.N.Y. Oct. 24, 2020) (dismissing a § 1981 retaliation claim where plaintiff's complaint could not "be reasonably understood as a complaint about discrimination" and thus, "d[id] not qualify as protected activity that can serve as the basis for a retaliation claim"); *cf. Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)

(dismissing a retaliation claim under Title VII where "nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory").[10]

### 3. Duty of Fair Representation

Defendants next argue that Plaintiff has failed to allege a breach of the Union's duty of fair representation and that, in any event, Plaintiff's claim is untimely.  (*See* Union Mem. 16–17; Bayberry Mem. 19 n.11; Russ Mem. 18 n.11.)

Under the NLRA, "unions owe their members a duty of fair representation, which derives from the union's statutory role as exclusive bargaining agent." *Williams v. Metro-N. R.R.*, No. 17-CV-3092, 2020 WL 1489832, at *12–13 (S.D.N.Y. Mar. 27, 2020) (quotation marks and alteration omitted) (citing *McLeod v. 1199 SEIU United Healthcare*, No. 17-CV-7500, 2019 WL 1428433, at *5 (S.D.N.Y. Mar. 29, 2019)), *aff'd sub nom. Williams v. MTA Metro N. R.R.*, No. 20-3418, 2022 WL 1053265 (2d Cir. Apr. 8, 2022).  "A duty of fair representation claim arises where 'a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.'"  *Vann v. Persico*, No. 20-CV-628, 2021 WL 1198844, at *7 (S.D.N.Y. Mar. 30, 2021) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)); *see also Williams*, 2020 WL 1489832, at *12–13 ("To successfully plead a breach of [the duty of fair representation], union member plaintiffs must plausibly allege two elements: 'that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith' and (2) 'a causal connection between the union's wrongful conduct and their injuries.'" (quoting *Vaughn v. Air*

---

[10] Plaintiff's NYSHRL retaliation claim fails for substantially the same reason.  *Mitchell*, 2022 WL 621956, at *6 (noting that prima facie cases of retaliation under § 1981 and the NYSHRL are analyzed under the same framework); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011) ("[R]etaliation claims under the NYSHRL are treated the same as retaliation claims under . . . Section 1981." (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.1 (2d Cir. 2001))).

*Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010))).  This claim is "governed by a six-month statute of limitations," which "accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred." *Vann*, 2021 WL 1198844, at *7 (quoting *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir. 1995)).

Here, Plaintiff alleges that the Union breached its duty of fair representation by refusing to process a grievance in connection with her November 11, 2021, termination.  (*See* AC; Union Decl. Ex. 3.)  Plaintiff did not file her Complaint with this Court until September 19, 2023, far outside the six-month statute of limitations.  (*See* Dkt. No. 1.)  Thus, any duty of fair representation claim alleged against the Union is time-barred, *see Maack v. 1199 SEIU Loc.*, 638 F. App'x 66, 67 (2d Cir. 2016) (summary order) (affirming the district court's dismissal of a duty of fair representation as untimely); *Vann*, 2021 WL 1198844, at *7 (dismissing as untimely a duty of fair representation claim filed three years after it accrued), and this claim fails due to its untimeliness.

### 4.  Improper Discharge

Finally, Defendants argue that Plaintiff's claim that she was improperly discharged because of her Union-related activity—i.e., her filing of a decertification petition—is barred by the NLRA.  (Bayberry Mem. 17–18; Russ Mem. 17–18; Union Mem. 15–16.)  The Court agrees.

Section 7 of the NLRA "guarantee[s] employees the right to organize and engage in other forms of protected concerted action," and Section 8 identifies "forms of unfair labor practices." *Ass'n of Car Wash Owners Inc. v. City of New York*, 911 F.3d 74, 81 (2d Cir. 2018).  However, claims of unfair labor practices under these Sections fall under the exclusive jurisdiction of the NLRB.  *New York by James v. Amazon.com, Inc.*, 550 F. Supp. 3d 122, 133 n.1 (S.D.N.Y. 2021)

(citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)).  Thus, "[e]ven if Plaintiff has alleged that [s]he engaged in an activity protected by the [NLRA], the Court would lack jurisdiction over that claim because the [NLRB] has exclusive jurisdiction over such claims." *Dawkins v. Biondi Educ. Ctr.*, No. 13-CV-2366, 2017 WL 325262, at *7 n.5 (S.D.N.Y. Jan. 20, 2017); *see also Pilchman v. Nat'l Lab. Rels. Bd.*, 831 F. App'x 46, 47 (2d Cir. 2020) (summary order) (noting "the NLRA does not provide for district court jurisdiction to review NLRB decisions"); *Fitzgerald v. Signature Flight Support Corp.*, No. 13-CV-4026, 2014 WL 3887217, at *6 (S.D.N.Y. Aug. 5, 2014) (noting that "exclusive jurisdiction over NLRA claims is lodged in the NLRB").  Accordingly, Plaintiff's §§ 7 & 8 claims must be dismissed.

### III.  Conclusion

For the foregoing reasons, Defendants' Motions are denied as to Plaintiff's discrimination claims under § 1981 and the NYSHRL but are granted as to all other claims.

Plaintiff's claim under §§ 7 & 8 fails for lack of subject matter jurisdiction and is accordingly dismissed without prejudice, *see Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) ("[D]ismissals for lack of subject matter jurisdiction "must be without prejudice, rather than with prejudice."), as are Plaintiff's Title VII claims, *see Standard Inv. Chartered, Inc. v. Natl Assn of Sec. Dealers, Inc*., 560 F.3d 118, 124 (2d Cir. 2009) (holding that "a dismissal for failure to exhaust available administrative remedies should be 'without prejudice' as [the Second Circuit] ha[s] previously ruled" and citing cases).  As this is the first adjudication on the merits of Plaintiff's § 1981 and NYSHRL retaliation claims, as well as her NLRA claims, the dismissal of those claims is also without prejudice.

If Plaintiff wishes to file a second amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within thirty days of the date of this Opinion & Order.  *See Tyson v. Town of Ramapo*, No. 17-CV-4990, 2019 WL

1331913, at *19 (S.D.N.Y. Mar. 25, 2019) ("The Court will afford [p]laintiff an opportunity to amend if, after reviewing this Order and Opinion and the law therein, [s]he still believes that [s]he can plausibly state claims against Defendants." (alteration adopted) (citation omitted)). There will be no extensions.  Plaintiff is further advised that a second amended complaint will completely replace, not supplement, the Amended Complaint. Any second amended complaint must therefore contain *all* of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file a second amended complaint, the dismissed claims may be dismissed with prejudice.

The Court will hold a telephonic status conference on November 3, 2025, at 10:30 AM.

The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 28, 38–39, 43), update the docket in this Action to conform with the caption in this Opinion and Order, and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:    September 17, 2025
       White Plains, New York

 

_____
      KENNETH M. KARAS
     United States District Judge